UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| PHILLIP C. PARISH, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:17CV985 RLW |
|  | ) |  |
| TROY STEELE, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on Phillip C. Parrish's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1). Because this Court has determined that Parish's claims are inadequate on their face and the record affirmatively refutes the factual assertions upon which Parish's claims are based, this Court decides this matter without an evidentiary hearing.[1]

## BACKGROUND

Parish was charged with two counts of first-degree murder and two counts of armed criminal action for the shooting of Tabitha Buckingham and her unborn child on May 22, 2011. Pursuant to plea negotiations, the State filed an information in lieu of indictment, which amended

---

[1] "A district court does not err in dismissing a movant's motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. U.S.*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. U.S.*, 341 F.3d 720, 722 (8th Cir. 2003)(citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a §2254 case, holding that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible.").

˘ 1 ˘

each count of first-degree murder to second-degree murder and left the two counts of armed criminal action unchanged. Parish pleaded guilty to two counts of second-degree murder and two counts of armed criminal action pursuant to the plea agreement.

At the plea hearing, the prosecutor stated the evidence, if presented at trial, would prove that on the afternoon of May 22, 2011, Parish, acting with others, knowingly caused the death of Tabitha Buckingham and her unborn child by shooting her with a gun. The prosecutor further stated the evidence at trial would show that Parish made statements to witnesses that he shot Buckingham twice in the head because "she had to be killed." Parish agreed the prosecutor's recitation of the evidence was "basically" what had happened.

Parish also indicated to the plea court that he had enough time to discuss the charges with his defense counsel, and he did not need more time to discuss his case. He confirmed he fully understood the charges, as well as the strengths and weaknesses of the case against him. He testified that counsel had performed everything Parish asked of him, including investigating his "defense and potential witnesses and the like." Parish stated he was satisfied with counsel's services.

Parish was sentenced to consecutive sentences of life and twenty years for the two murders and concurrent terms of ten years for each count of armed criminal action. After sentencing, Parish reiterated he had no complaints regarding his representation, was satisfied with his attorneys' representation, and was satisfied with his attorneys' services who did everything Parish asked of them.

Parish timely filed a pro se post-conviction motion under Mo. S. Ct. R. 24.035. (Respondent's Ex. F at 3; see also Respondent's Ex. A at 47-53). The court appointed counsel, who filed an amended motion. The amended motion alleged that plea counsel was ineffective

for not properly investigating potential witnesses Markeysha Dodd and Willie Brewingon, Jr. and misled Parish about the results of that investigation. (Respondent's Ex. A at 73, 77-79). Parish claimed that plea counsel told him that the witnesses turned against him. (*Id.* at 73). Parish did not raise any allegations regarding counsel's alleged statements regarding the length of time Parish would have to serve on his murder sentences before he was eligible for parole.

Following an evidentiary hearing, the motion court denied the amended motion. The court noted counsel weighed the potential witness testimony with the State's evidence and advised Parish of counsel's opinion regarding the outcome of the case. The court found plea counsel's testimony to be credible and concluded counsel did not mislead Parish about the state of the investigation and did not tell Parish that his witnesses had turned against him. The court further noted Parish testified during his plea and sentencing that counsel had done everything Parish asked of counsel and Parish was satisfied with counsel. The court concluded Parish's guilty plea was voluntary.

Parish appealed. On appeal, Parish asserted the portion of his claim related only to Dodd. (Respondent's Exs. C, E, F, G). The Missouri Court of Appeals found that Parish's claim was without legal merit. (Respondent's Ex. F at 6-9).

Parish filed this habeas petition. Ground One states:

> [Plea] Counsel Scott Rosenblum, Jenna Glass mislead Mr. Parish about an investigation into his witnesses, his only option of defense lead him to believe his witnesses refuse to testify at his trial. Counsels lied about the amount of time he would have to serve in the Mo. Department of Corrections; mislead Mr. Parish about reviewing evidence that do not exist. Counsels never interviewed criticle witnesses in Mr. Parish case.

(*sic passim*; ECF No. 1 at 5)

Ground Two states, "Counsel lead [sic] Mr. Parish to believe his witnesses all turned against him and was [sic] not coming to trial." (ECF No. 1 at 6).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. §2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). "[I]n a §2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). "'A state court's decision is contrary to ... clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision ... and nevertheless arrives at a [different] result.'" *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that §2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. A State court

"unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. A State court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

### I. CLAIM ONE

In Claim One, Parish asserts that plea counsel was ineffective for failing to properly investigate his case by not subpoenaing two witnesses: Willie Brewington and Markeysha Dodd. Parish also claims counsel erroneously told him that "all turned against him" and "[were] not coming to trial." (ECF No. 1 at 5, 6; ECF No. 1-1 at 4-5, 9). Parish raised this claim with respect to Dodd during his post-conviction appeal.[2] The Missouri Court of Appeals found that Parish failed to establish that counsel was ineffective for failing to investigate Dodd and failed to establish that counsel misled him regarding Dodd's availability to testify (Respondent's Ex. F at 9). The Court holds state court's adjudication of this portion of Claim One is entitled to deference under Section 2254(d).

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel

---

[2] Dodd provided an affidavit that Brandon Harton admitted that he was responsible for the murder of Tabitha Buckingham. (ECF No 1-1). Dodd claimed Harton told her that he left his job at the Galleria to have sex with Buckingham, but a gun accidentally went off as they were arguing. *Id.*

on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. The *Strickland* prejudice standard is less demanding than a more-probable-than-not standard, but the difference is "slight and matters only in the rarest case." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (internal quotation omitted). To satisfy *Strickland,* the likelihood of a different result must be "substantial, not just conceivable." *Id.* Under the Antiterrorism and Effective Death Penalty Act (AEDPA), the Court must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id.* at 785. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786;*Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012).

The record before the Court reflects the Missouri Court of Appeals properly identified and reasonably applied the two-part test from *Strickland* when it rejected Parish's claim. *See* Respondent's Ex. F at 6-7.

The appellate court found Parish did not present credible evidence that his counsel failed to investigate Dodd. (Respondent's Ex. F at 7). The appellate court found that the record supported the motion court's conclusion that counsel fully and completely investigated Parish's witnesses. (*Id*). The court explained:

> Ms. Dodd, herself, testified she met with Ms. Glass several times. Although Ms. Glass did not specifically recall meeting with Ms. Dodd, she admits it was possible. Both she and Mr. Rosenblum testified they were aware of the substance of Ms. Dodd's proposed testimony implicating Harton. Further, Ms. Glass testified the police investigated Harton and his alibi was verified, thereby making Ms. Dodd unhelpful as a witness.

(*Id.*). The appellate court also found "from counsel's perspective, they reasonably concluded further investigation of Harton was unnecessary." (*Id.*). The court noted the State's overwhelming evidence supporting Harton's alibi including: Harton's work commute by train; Harton's presence at work at the time of the crime; and witness verification that Harton was at work at the time of the crime. (*Id.*). Based upon this evidence, the appellate court concluded it was reasonable for counsel to decline to investigate Harton's purported alibi. (*Id.*). Likewise, the appellate court found it was reasonable for counsel to conclude that Dodd's testimony would not have provided a viable defense for Parish. (*Id.* at 8).

The appellate court also noted that Parish failed to demonstrate that counsel told Parish that his witnesses had turned against him. (*Id.* at 7-8). The Missouri Court of Appeals found that Parish's counsel's testimony contradicted Parish's version and the motion court found counsel's account to be credible. (*Id.*). The Court holds that the appellate court properly deferred to the credibility determination of the motion court.

The motion court further found that counsel advised Parish about whether to proceed to trial and provided him with relevant and material information regarding this decision. The appellate court found that the motion court's finding was supported by the record:

> Rosenblum and Glass testified at the hearing that they counseled [Parish] at length about the strength of the evidence—including whether to implicate Harton as a suspect. Mr. Rosenblum stated he and [Parish] had a "lengthy discussion" of whether they could successfully pin the crime on Harton. He testified that trying to pin the murder on Harton "would have been ridiculous, with no credibility, and completely shot down by even the most junior prosecutor." Ms. Glass maintained it would have been impossible for Harton to have committed the crime and calling Ms. Dodd as a witness would not have assisted [Parish].

(*Id.*).

The Missouri Court of Appeals also found that the motion court's denial of Parish's claim was supported by Parish's own testimony during the plea hearing and sentencing. (Id. at 8-9).

The appellate court noted that Parish confirmed he had a full understanding of the charges and the strengths and weaknesses of the case against him. (*Id.* at 8). Parish testified he was satisfied with his attorneys' services and counsel had done everything he asked, including fully investigating his "defense and potential witnesses and the like." (*Id.* at 9). The Court holds the state court's decision is entitled to deference under Section 2254(d) and is supported in the record.

Parish failed to allege that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. Instead, Parish seems to base his argument on the "unreasonable determination of the facts" language of Section 2254(d)(2). Parish challenges the state court's adjudication of his claim by challenging two portions of plea counsel's testimony at the evidentiary hearing. Specifically, Parish claims that counsel "lied" when they testified that they recalled the State's evidence included "cell phone pings" and a video of Horton at the Galleria. (ECF No. 1-1 at 2, 7, 10).

The Court, however, rejects Parish's argument. Federal statute directs that a writ of habeas corpus "shall not be granted" unless the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Parish has not met this burden. First, the Missouri Court of Appeals' opinion does not suggest that its decision was based on plea counsel's testimony regarding the cell phone pings or counsel's testimony that the State had videotaped footage of Harton inside the Galleria. The appellate court discussed the State's evidence supporting Harton's alibi when it rejected Parish's claim, and did not specifically mention any video footage of Harton inside the Galleria. *See* Respondent's Ex. F at 7. Likewise, neither the appellate court's decision nor the motion court mentions "cell phone pings." *See* Respondent's Ex. A at 98-104; Respondent's Ex. F.

˜8˜

In addition, even if Parish could establish the appellate court's decision was based on these factual findings, Parish has not shown the facts are supported in the state court record by clear and convincing evidence. During the post-conviction proceedings, plea counsel testified regarding their recollection of their review of the State's evidence against Parish, their review of Parish's witness statements, and the police investigation regarding Harton's alibi. (Respondent's Ex. B at 9-10, 12-14, 18-19, 25, 29-30, 33-36, 39, 56-57). As to the cell phone pings, the state had cell phone ping information that was consistent with witness testimony that Parish had made incriminating statements. (Respondent's Ex. B at 33-34). Further, evidence in the record indicated that plea counsel viewed the Galleria video footage of Harton at some point in the prosecutor's office (Respondent's Ex. 34-35). Plea counsel also discussed Harton's alibi evidence and found it was "fairly airtight":

> [The State] had [evidence of] him coming off of the MetroLink when he said, going to the Galleria where he worked. They had him returning to the MetroLink after hours that would have taken him away from the time that the murder could have been committed. And they also had a manager verify his presence at the fast-food restaurant that he worked as well as time records that verified his presence.

(Respondent's Ex. B at 18-19; *see also id.* at 56-57). No evidence in the record refutes the prosecutor's statement that the State had video footage of Harton in the Galleria. Finally, plea counsel was aware that Harton could not have committed the crime because Parish admitted to counsel that he shot and killed the victim. (Respondent's Ex. B. at 42, 55).

Thus, in light of the state court record, the Court holds the state court reasonably applied *Strickland* to reject Parish's claim. Parish has not established the state court decision was "based on an unreasonable determination of the facts" in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d)(2). This portion of Claim One is denied.

## II. PROCEDURAL DEFAULT

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012). Under the doctrine of procedural default, a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. 307, 315 (2011). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750; *Martinez*, 566 U.S. at 10.

Parish raised a claim challenging Willie Brewington's testimony in his amended post-conviction motion. (Respondent's Ex. A at 73, 77). The motion court denied Parish's claim. (*Id.* at 103-04). Parish, however, did not include this claim on appeal. *See* Respondent's Exs. C, E, F, G. The Court holds that this portion of Claim One is defaulted. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (citing *Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir.1988) ("Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review.").

Likewise, the Court holds that Claim Two is defaulted. Parish did not allege in his post-conviction proceeding that his counsel misinformed him regarding the amount of time he would have to serve on his second-degree murder conviction before he would be eligible for parole.

Parish did not assert this claim for ineffective assistance of counsel in a timely filed Rule 24.035 motion. Therefore, the Court holds Claim Two is defaulted.

Further, the Court holds that Parish cannot establish cause to set aside the default. In *Martinez*, the Supreme Court expanded on what may constitute cause for the default, holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315. In so doing, the Court recognized a limited exception to *Coleman v. Thompson*, which had held that ineffective assistance of a post-conviction attorney could not constitute cause for a procedural default. *Id.* at 1319. The Supreme Court, in *Martinez*, distinguished between attorney errors in initial-review collateral proceedings versus errors in other kinds of collateral proceedings, explaining, "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim," whereas when counsel errs in other kinds of collateral proceedings, at least "the claim will have been addressed by one court." *Id.* at 1316. The *Martinez* Court held that in the very limited circumstance when state law requires prisoners to raise an ineffective assistance of counsel claim in a collateral proceeding:

> [A] prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington* ... To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Martinez*, 132 S.Ct. at 1318. That is, where state law bars a defendant from raising claims of ineffective assistance of trial counsel on direct appeal, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."

*Martinez,* 132 S.Ct. at 1320; *see also Dansby v. Norris,* 682 F.3d 711, 728 (8th Cir.2012), *adhered to on denial of reh'g sub nom.*; *Dansby v. Hobbs,* 691 F.3d 934, 936 (8th Cir.2012).

Under Missouri law, ineffective assistance of counsel claims must first be raised in a Rule 29.15 collateral proceeding. Mo. Sup.Ct. R. 29.15 (stating that "Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court" for ineffective assistance of counsel, among other violations). Furthermore, "any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal," including ineffective assistance of counsel claims. *State v. Clay,* 975 S.W.2d 121, 141 (Mo.1998); *see also State v. Taylor,* 1 S.W.3d 610, 612 (Mo.Ct.App.1999) (stating that "[c]laims of ineffective assistance of counsel are not cognizable in a direct appeal," but must be raised first in a Rule 29.15 proceeding); *Barnett v. Roper,* 941 F. Supp. 2d 1099, 1111–12 (E.D. Mo. 2013).

In his habeas petition, Parish has not alleged he can satisfy either "cause" or "actual prejudice." Therefore, his claims are procedurally defaulted, and the Court denies these claims on this basis.

Even if Parish attempted to blame his post-conviction counsel for his default, his argument would be futile because Parish cannot establish "cause" under *Martinez*. The defaulted portion of Claim One was raised by initial post-conviction counsel in the amended motion. The default occurred when post-conviction appellate counsel did not include the claim on appeal. Ineffective assistance of post-conviction appellate counsel is not "cause" under *Martinez*. *See Arnold v. Dormire,* 675 F.3d 1082, 1087 (8th Cir. 2012) ("any error by postconviction appellate counsel would not constitute cause to excuse Arnold's procedural default").

Similarly, Parish's Claim Two is also defaulted and cannot be overcome. As discussed in the next section, the record refutes Parish's defaulted Claim Two and Parish does not plead any

facts establishing that he was prejudiced by plea counsel's purported error. Therefore, the Court holds that Claim Two is insubstantial under *Martinez*. Moreover, Parish would be unable to show that his initial post-conviction counsel was ineffective for failing to raise the defaulted claim because the claim is refuted by the record. Post-conviction counsel cannot be ineffective for failing to raise a meritless claim. *Grubbs v. Delo*, 948 F.2d 1459, 1464 (8th Cir. 1991) ("counsel on ... appeal cannot be considered ineffective for having failed to argue a meritless issue before the Missouri Supreme Court"); *Meyer v. Sargent,* 854 F.2d 1110, 1115-16 (8th Cir.1988) (no prejudice under *Strickland* when counsel on direct appeal fails to raise a meritless issue).

### III. REMAINING CLAIMS

#### A. Brewington's Testimony

In Claim One, Parish alleged that Brewington would have testified that "Brandon," another one of the State's witnesses, brought him the gun, not Parish. (ECF No. 1-1 at 6). Parish essentially argues that plea counsel failed to investigate the statement of a witness Brewington. Parish alleges that Brewington would have been a potential impeachment witness to State's witness, Curtis Steele. (ECF No. 1-1 at 6). Steele told police that Parish brought him the murder weapon. (Respondent's Ex. B at 29-30). This claim was also raised in the amended post-conviction motion. (Respondent's Ex. A at 73-77), and the motion court rejected the claim as meritless. (*Id.* at 103-04). The Court affords the motion court's decision deference under §2254(d). The Court holds the motion court reasonably applied *Strickland* and is supported by the state court record.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary[.]" *Strickland*, 466 U.S. at 691. "There is no per se rule that failure to interview witnesses constitutes ineffective assistance because such claims

turn on their individual facts." *Deck v. Steele*, 249 F. Supp. 3d 991, 1027 (E.D. Mo. 2017) (citing *Sanders v. Trickey*, 875 F.2d 205, 209 (8th Cir. 1989)). To succeed on a claim that counsel was ineffective for failing to investigate, Parish may not base his claim on conclusory allegations but rather must allege what information his attorney failed to discover. *Sanders*, 875 F.2d. at 210. A habeas petitioner who offers only speculation that he was prejudiced by counsel's failure to investigate fails to show ineffective assistance of counsel. *Id.*; *see also Redeemer v. State*, 979 S.W.2d 565, 569 (Mo. Ct. App. 1998).

Plea counsel testified that they were aware of the substance of Brewington's statement because they read Brewington's letter. (Respondent's Ex. B at 7, 25, 39, 47-48). Plea counsel testified that she did not interview Brewington at that time because he was incarcerated in the Missouri Department of Corrections. However, plea counsel stated she planned to meet with him before trial, if Parish's case went to trial. (*Id.* at 47-48). Co-plea counsel testified he did not interview Brewington because he knew the substance of Brewington's statement from his letter. (*Id.* at 39). Brewington testified at the post-conviction proceeding that his testimony at Parish's trial would have been consistent with his statements in his letter. (*Id.* at 61-73). Based upon this information and counsel's knowledge (as previously discussed), counsel reasonably decided that investigation into Brewington's statements was unnecessary. The Court, therefore, holds that the state court's decision was reasonable and entitled to deference. The Court holds that this portion of Claim One is properly denied on merits, as well as procedurally defaulted.

### B. Parole Eligibility

In his final claim, Parish asserts plea counsel misled him regarding the amount of time he would have to serve for his second-degree murder sentence. Parish maintains that plea counsel told him he had to serve "at least twenty[-]five and half years" on his second-degree murder sentence because "it's considered to be a thirty[-]year sentence," and counsel should have told him

that he would have to "serve over thirty eight years" in the Missouri Department of Corrections before he would be eligible for parole. (ECF No. 1-1 at 11). In support, Parish cites to his counsel's testimony during the post-conviction proceeding. (ECF No. 1-1 at 11 (citing "pg. 21 LNS. 11-18")).

The Court, however, finds that plea counsel's testimony does not help Parish. Rather, plea counsel's testimony demonstrates that they explained to Parish that he would serve a minimum of twenty-five and a half years of a single life sentence for second-degree murder under the plea agreement before being parole eligible, but he would possibly serve more time. Plea counsel offered this testimony regarding his discussions with Parish prior to his guilty plea:

> I discussed my view of the evidence. I discussed the fact that he realized that the case—the evidence was bad against him. I discussed what a possible defense would be and that in my guess, as I've tried at that point over 100 murder cases, and that the evidence in this, although circumstantial, was some of the most compelling evidence that I've seen.
>
> I've discussed that—I discussed that the fact that I absolutely will try his case, the decision is completely his. I discussed the fact that all I can do is tell you what the evidence is and how it appears to me, but ultimately whether he wants to go to trial or not, I told him that this is a case that I believe the State would win, resulting in a conviction of murder in the first degree, with carried a life without the possibility of parole sentence.
>
> I discussed that this case was a case that very easily could have been a death penalty case. *I discussed that if they would reduce the charge to murder second that he would have to serve, by law, at least 25 and a half years, because it's considered to be a 30-year sentence, and that if they would run time on top of that, that's up to the Department of Corrections, but assuming that they did, on the second count, that would still give him an opportunity to get out.*

(Respondent's Ex. B at 21 (emphasis added). Counsel correctly identified that under Missouri law a life sentence for second-degree murder is calculated at thirty years for determining parole eligibility and a defendant must serve at least eighty-five percent (or twenty-five years and six months) of that sentence before a defendant is eligible for parole. *See* Mo. Rev. Stat. §558.019.3 and .4(1) and §556.061(8). As discussed, plea counsel told Parish that he may have to serve more

time, but he would still have an opportunity for parole if he pleaded guilty. In contrast, if Parish went to trial on first-degree murder charges, he would have received a mandatory life sentence, without the opportunity for parole because the State did not seek the death penalty. *See* Mo. Rev. Stat. §565.020. Parish failed to demonstrate that counsel misled him regarding his parole eligibility.

In addition, Parish has not pleaded facts establishing that he was prejudiced by counsel's advice. Parish does not allege that he would have rejected the plea deal if counsel had told him that he must serve thirty-eight years before he would be parole eligible and that, instead, he would have proceeded to trial on two counts of first-degree murder. Therefore, the Court holds that Claim Two is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Phillip C. Parish's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

A judgment dismissing this case is filed herewith.

Dated this 31st day of March, 2020.

/s/ Ronnie L. White
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE